1

2

3

4

5

6

7

8                                 **UNITED STATES DISTRICT COURT**

9                                 **EASTERN DISTRICT OF CALIFORNIA**

10

11    MICHAEL PURTUE,                          )    Case No.: 1:15-cv-00551-SAB (PC)
                                               )
12                      Plaintiff,             )
                                               )    ORDER REQUIRING PLAINTIFF TO FILE FIRST
13          v.                                 )    AMENDED COMPLAINT OR NOTIFY COURT
                                               )    OF INTENT TO PROCEED ON CLAIMS FOUND
14    B. KEARNES, et al.,                       )    TO BE COGNIZABLE
                                               )
15                      Defendants.            )    [ECF No. 1]
                                               )
16    _____ )

17          Plaintiff Michael Purtue is appearing pro se and in forma pauperis in this civil rights action

18    pursuant to 42 U.S.C. § 1983.  Plaintiff consented to United States magistrate judge jurisdiction

19    pursuant to 28 U.S.C. § 636(c).  (ECF No. 5.)

20          Currently before the Court is Plaintiff's complaint, filed on April 10, 2015.

21                                                **I.**

22                                  **SCREENING REQUIREMENT**

23          The Court is required to screen complaints brought by prisoners seeking relief against a

24    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

25    Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

26    "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

27    monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

28

                                                  1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff names B. Kearnes (correctional officer), G. Eberle (correctional officer), S. Rizer (correctional officer), Meyers (correctional officer), M. Brown  (correctional officer), T. Langhardt (correctional officer), K. Holland (chief deputy warden), Sanders (correctional captain), L. Lundy (correctional lieutenant), D. Magallances (correctional lieutenant), Mello (correctional sergeant), M. Worrell (correctional sergeant), B.A. Wilson (correctional officer), Lopez (correctional officer), R. Sanchez (correctional officer), and J. Sanchez (correctional officer), as Defendants.

On October 13, 2009, Plaintiff arrived at California Correctional Institution (CCI).  On February 1, 2010, Plaintiff was involved in a cell fight with his cellmate and subsequently moved and rehoused in housing unit 8.  Defendant T. Langhardt packed and inventoried Plaintiff's personal property.

2

On February 19, 2010, when Defendants B. Kearnes and G. Eberle attempted to re-issue Plaintiff his property, Plaintiff noticed some of his property was missing and refused to sign the inmate property inventory CDC 1083 form and Defendant Kearnes therefore refused to give Plaintiff his property.

On February 21, 2010, Plaintiff spoke to Defendant B. Mello regarding his missing property and Defendant Mello stated, "I am working a double today and later today I would [sic] call over to a building and have them get the rest of your property."

On March 2, 2010, Plaintiff was re-issued his property by Defendants Kearnes and Eberle and Plaintiff noticed a large portion of his property missing.  Plaintiff informed Kearnes of his missing property who stated, "602 it."  Later that day, Plaintiff spoke to Defendant Worrell regarding his missing transcripts and property and Worrell stated, "whose the officer [that] transpacked you[r] property."  Plaintiff stated officer T. Langhardt's name was on the property inventory sheet and he explained to Worrell that he was involved in a cell fight and his property was later transpacked by Defendants T. Langhardt and Kearnes.  Worrell stated that Plaintiff's property should not have went to R&R and he would call and talk to officer Langhardt.

In response to Plaintiff's inmate grievance at the informal level, Defendant Langhardt stated that Plaintiff's cellmate bagged all of Plaintiff's property and he only inventoried what was in the bag, which is contrary to department policy.  In the crime incident report, correctional lieutenant R. Johnson noted that officer T. Langhardt removed and inventoried Plaintiff's property which was subsequently taken to R&R.

Plaintiff contends that Defendants deliberately took his trial transcripts and circulated them to inmates in order to spread the rumor that Plaintiff was a "snitch" and "rat."

On March 27, 2010, during an escort for visitation, Defendant S. Rizer entered A-section as Plaintiff was passing by and Rizer stated, "rat."

On May 1, 2010, Defendant Kearnes was passing out disinfectant in A-section and stood at the top of the stairs and faced the cell doors and yelled out, "he confessed."

3

On May 6, 2010, Plaintiff wrote a letter of complaint to Warden F. Gonzalez regarding the intentional taking of his personal property and transcripts-were officers circulated around to inmates and referred to Plaintiff as a "rat."

On May 8, 2010, Defendant Rizer said something to an inmate on the bottom tier who later that afternoon started talking to another inmate over the tier and yelled out "he went in that house and killed those people and told everything."  Defendant Rizer conspired with inmates by giving them information from Plaintiff's transcripts.  On this same date, Defendant Garcia stated from the top tier "game over he gonna tell but he better not go to A-yard."

On May 13, 2010, Defendant Kearnes escorted a nurse around to pass out medication and Kearnes yelled out "CDC don't' care about your property."

On May 14, 2010, Plaintiff wrote a family member regarding his missing property.  On May 17, 2010, Defendant S. Rizer entered A-section to do yard release and yelled out "we'll chew you up."

On May 22, 2010, Defendant Rizer entered A-section and yelled out "fuck it let him lock up."

On May 27, 2010, during morning showers Defendant Kearnes told a Mexican inmate "those niece [sic] a shit ass papers he ain't never getting them back," and the inmate responded "Fraizer goes down."

On May 29, 2010, Defendant A. Garcia stopped at cell #104 and stated "I see that they didn't show up."  Defendant Garcia's statement to the inmates shows he had actual knowledge of Plaintiff's missing transcripts.

On June 1, 2010, during institutional count Defendant Eberle stopped at Plaintiff's cell and stated "Hey Purtue the sergeant who heard your appeal should have granted it he messed up and the word around is that you are going to win it at the second level so appeal it trust me."

On June 2, 2010, Plaintiff heard Defendant Kearnes yell out "we got a copy in our office."

On June 14, 2010, Defendant Eberle passed some papers to inmates in his housing section, and Plaintiff heard an inmate yell "I got those legal papers."  Defendant circulated Plaintiff's trial transcripts around the housing unit to inmates.

On June 21, 2010, Defendant Eberle stopped at cell #203 housing Mexican inmates and stated, "we gonna fuck his ass."

4

On June 23, 2010, Defendant B. Mello entered A-section and cell #110 housing Mexican inmate and Plaintiff heard Mello stated "I just want to make sure we're on the same page."  Right after that statement, Defendant B. Mello came directly to Plaintiff's cell door along with Defendant Eberle and told Plaintiff "you need to come out of the cell and Plaintiff said what for and [D]efendant B. Melllo stated "because you haven't been out of the cell in a while."  They gave Plaintiff until the next day to exit his cell and Defendant Mello told Defendant Eberle "we'll get him."

On June 26, 2010, Defendant Meyers stopped at cell #103 housing White inmates and stated "he's a rat."  Meyers deliberately exposed Plaintiff to harm at the hands of other inmates.

On June 28, 2010, Defendants B.A. Wilson and Lopez went next to Plaintiff's cell, and Defendant Wilson stated "we gonna make 30 copies," and Defendant Lopez responded "I know that's right."   Defendants' conversation about Plaintiff's trial transcripts is enough to show that they knew or must have known about it and acted with deliberate indifference to Plaintiff's property.

On July 28, 2010, Defendant Eberle yelled out from the dayroom floor "you rat."

On July 3, 2010, Defendant M. Brown talked to Plaintiff on behalf of lieutenant Dailo relating to his inmate appeal.  Brown directed Plaintiff to write down all the missing documents.  Plaintiff wrote that he was missing his front page and statement of facts to his habeas corpus case.  Defendant Brown later returned with three legal documents, including a copy of the front page to his habeas corpus petition and two copies of his statement of facts in support of his petition.  When Plaintiff asked Defendant Brown where he obtained the copies, Brown informed him that lieutenant Dailo gave them to him.

Plaintiff affirmed that Defendants made copies of his transcripts and tried to pass them off as Plaintiff's original transcripts that Defendants unlawfully confiscated and Defendant Brown's statement to contact the court and get Plaintiff transcripts to replace the transcripts Defendant stole.

On August 4, 2010, Defendant K. Holland, Chief Deputy Warden, responded to Plaintiff's letter dated May 6, 2010 (on behalf of Warden Gonzalez), and Defendant Holland failed to take action.

On October 5, 2010, Plaintiff was pepper sprayed by Defendant B. Mello and removed from one building to another where prison officials continued to pass his transcripts around to inmates and label Plaintiff a snitch.

On October 7, 2010, Defendant J. Emerson entered B-section and yelled out "gonna get a stickin." Defendant Emerson's comment toward Plaintiff proves he knows about a substantial risk of serious harm to Plaintiff.

On October 13, 2010, Defendant R. Sanchez escorted Mexican inmates back from the doctor line and when Sanchez removed the handcuffs from the inmates he stated "he snitch but you didn't hear it from me."

On October 31, 2010, while Defendant Khan was escorting a nurse to disperse medication, Khan stated to the Mexican inmate "it's going down." Later that evening, during institutional count Defendant R. Sanchez entered B-section and he yelled out "got your ass."

On November 17, 2010, Defendant J. Chavez escorted a Black inmate to the afternoon shower and once the inmate was inside the shower, Defendant Chavez stated to the inmate "he's a rat."

On November 23, 2010, Defendant E. Allison entered B-section to pick up breakfast trays and yelled out "everywhere you go its going to get out," in reference to Plaintiff missing trial transcripts.

On December 8, 2010, Defendant B. Mello entered B-section and stood inside the section doorway and yelled out "you have until Friday or its everywhere you go." Defendant was speaking about Plaintiff's missing trial transcripts. Later that evening, Defendant Chavez told the inmates "since he ain't coming out as soon as he file his appeal its all the way live."

On December 9, 2010, Defendant D. Carrillo was taking a Mexican inmate out of his cell and escorting him to the shower and stated to the inmate "did you do it" and the inmate said "yeah I copied everything down."

On December 13, 2010, Defendant Widley entered B-section and after he passed out some papers to an inmate, the inmate yelled over the tier "he's all bad that dude ain't no good."

On March 26, 2011, lieutenant Mayo interviewed Plaintiff regarding his cancelled appeal submitted on February 14, 2011. Plaintiff was informed that he because his appeal was cancelled he would not receive a response, and the Warden requested if Plaintiff had anything additional to add.

6

Lieutenant Mayo then stated "you think my officers would risk [their] jobs at $100,000.00 a year just to pass your transcripts around this (8) officers you have down here even a sergeant.  Now what makes you so important that my officers would want to mess with you by passing your transcripts around to inmates.  [There is] a whole lot of ways they can mess with you that will make your head go crazy."

Plaintiff told lieutenant Mayo that because of a racial conflict between Plaintiff and Mexican inmates, officers gave them Plaintiff's property and planned to expose his transcripts over the tier to appease the Mexican inmates to resolve the conflict.  Lieutenant Mayo stated, "there's one way to mess with you."  Plaintiff advised Mayo that the problem had been going on for over two years and Plaintiff previously reported the misconduct by way of inmate grievances.

Mayo stated, "we may have lost your transcript somehow but we can replace them by getting a copy from the court."  Plaintiff informed lieutenant Mayo that on July 3, 2010, officer M. Brown showed Plaintiff a copy of his missing transcripts with his name and the caption that identified the document missing.

On October 5, 2011, Plaintiff was extracted from his cell and pepper sprayed and his personal property was confiscated, which included the original inmate appeal in Log No. CCI-0-10-00533, IAB Case No. 1001750, IAB Case No. 1010197, IAB Case No. 1019198, IAB Case No. 1019199, Log No. LAC-12-00816, and LAC 12-01594, and Plaintiff was rehoused to a different building.

On October 18, 2011, Plaintiff was again extracted from his cell and pepper sprayed and transferred to Lancaster State Prison.

On December 15, 2011, Plaintiff was extracted from his cell and pepper sprayed and transferred back to the California Correctional Institution and officers Work and Miles passed around Plaintiff's habeas corpus transcripts.

On January 26, 2012, Plaintiff was extracted from his cell and pepper sprayed and transferred back to Lancaster State Prison where he refused to participate in the program.

On May 8, 2012, Plaintiff was extracted from his cell and pepper sprayed and again transferred back to California Correctional Institution.

On July 29, 2012, Plaintiff was transferred to Salina State Prison and was housed there for approximately eight months.  On March 29, 2012, Plaintiff was transferred to Donavan State Prison

1   administrative segregation unit for approximately three months.  On May 9, 2013, Plaintiff was

2   transferred to New Folsom for four months.

**II.**

**DISCUSSION**

**A.     Deprivation of Personal Property**

        The Due Process Clause of the Fourteenth Amendment of the United States Constitution

protects Plaintiff from being deprived of property without due process of law, Wolff v. McDonnell,

418 U.S. 539, 556 (1974), and Plaintiff has a protected interest in his personal property, Hansen v.

May, 502 F.2d 728, 730 (9th Cir. 1974).  The United States Supreme Court has held that "an

unauthorized intentional deprivation of property by a state employee does not constitute a violation of

the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Thus,

where the state provides a meaningful postdeprivation remedy, only authorized intentional

deprivations constitute actionable violations of the Due Process Clause.  An authorized deprivation is

one carried out pursuant to established state procedures, regulations, or statutes.  Piatt v. McDougall,

773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149

(9th Cir. 1987).

        The confiscation of Plaintiff's trial transcript was a random and unauthorized deprivation

which does not give rise to constitutional violation as the Due Process is not violated by the random,

unauthorized deprivation of property so long as the state provides an adequate post-deprivation

remedy.  California Law provides an adequate post-deprivation remedy for any property deprivations.

See Cal. Gov't Code §§ 810-895; Barnett v. Centoni, 31 F.3d 813, 816-817 (9th Cir. 1994).  "It is

immaterial whether or not Plaintiff succeeds in redressing his loss through the available state

remedies; it is the existence of these alternate remedies that bars him from pursuing a § 1983

procedural due process claim."  Hutchison v. Marshall, No. CV 09-04540-ABC (VBK), 2011 WL

862118, *9 (C.D. Cal. Feb. 3, 2011).  in In addition, Plaintiff's allegations as the loss and/or

destruction of his other personal property relate to alleged negligence or intentional failure to

inventory his personal property which resulted in its unauthorized destruction, fails to state a

8

1    cognizable claim under section 1983.  Accordingly, Plaintiff fails to state a cognizable due process

2    violation.

3         **B.      Eighth Amendment- Failure to Protect**

4         The Eighth Amendment protects prisoners from inhumane methods of punishment and from

5    inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

6    Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with

7    food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S.

8    825, 832-33 (1994) (quotations omitted).  Prison officials have a duty under the Eighth Amendment to

9    protect prisoners from violence at the hands of other prisoners because being violently assaulted in

10   prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

11   Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir.

12   2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable

13   under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a

14   substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs

15   when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.

16   Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

17   Plaintiff "need not show that a prison official acted or failed to act believing that harm actually would

18   befall on inmate; it is enough that the official acted or failed to act despite his knowledge of a

19   substantial risk of serious harm."  Farmer, 511 U.S. at 842.

20        Based on Plaintiff's allegations in the complaint, Plaintiff contends that because of a racial

21   conflict between Plaintiff and Mexican inmates, officers gave inmates Plaintiff's property and exposed

22   his transcripts over the tier to appease the Mexican inmates to resolve the conflict.  (Compl. at 16.[1])

23   Plaintiff contends Defendants deliberately took his trial transcripts and circulated them to inmates in

24   order to spread the rumor that Plaintiff was a "snitch" and a "rat."

25        Based on Plaintiff's allegations set forth in the complaint, Plaintiff states a cognizable failure

26   to protect claim against Defendants Rizer, Eberle, Meyers, Emerson, Sanchez, Chavez, Mello, Lundy,

27

28   _____
     [1] The pagination references are to the pages numbers assigned in the Court's electronic docket.

and Magallance by informing and/or implying to others that Plaintiff was a "snitch" and/or "rat. However, Plaintiff's allegations are insufficient to give rise to a failure to protect claim against any other individuals.  If Plaintiff seeks to amend this claim, he must amend the complaint to specifically set forth the facts as to what statement was made, to whom, how the statement is attributable to Plaintiff and how it gives rise to a failure to protect him from harm.

### C.      Excessive Force

Plaintiff contends that on October 5, 2011 and October 18, 2011, he was pepper sprayed by Defendant B. Mello and removed from building number 8 to building number 1 where prison officials continued to pass his transcripts around to inmates and label Plaintiff a snitch.  To the extent Plaintiff seeks to state a separate claim for excessive force based on the use of pepper spray, Plaintiff's factual allegations fail to provide sufficient detail for the Court to determine whether such claim is plausible or patently frivolous. First, Plaintiff raises several different claims arising at different prisons, some of which are not within this Court's jurisdiction, namely, California State Prison in Lancaster, California which is the United States District Court for the Central District of California and Salinas Valley State Prison in Soledad, California which is the United States Northern District of California.  Second, Plaintiff fails to link any named individual to the alleged misconduct.  Third, Plaintiff does not explain what led to the incident, what if any reasons were given by defendants for their actions, whether defendants engaged in other conduct to defuse the use of force, or why Plaintiff believes the use of force was objectively unreasonable.  Accordingly, Plaintiff fails to state a cognizable claim for excessive force under the Eighth Amendment.

### D.      Supervisory Liability

Plaintiff contends that Captain Sanders breached his duty when he ordered prison officials to pass Plaintiff's missing transcripts around to inmate in the housing unit.  Plaintiff also claims that Chief Deputy Holland failed to take action to adequately address Plaintiff's complaints.  Plaintiff's claims are nothing more than conclusory allegations devoid of factual support.  To the extent Plaintiff seeks liability against Sanders and Holland based on their supervisory position, Plaintiff's claim is without merit.

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability.  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16.  "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation."  Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Chief Deputy Holland or Captain Sanders.  The only basis for such a claim would be respondeat superior, which is precluded under section 1983.  Accordingly, Plaintiff fails to state a cognizable claim for relief against Defendants Holland and Sanders.

**E.      Inmate Appeals**

Plaintiff contends that lieutenant Mayo handled his inmate appeal and failed to take corrective action.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

11

Thus, Plaintiff cannot state a cognizable claim against Defendant Mayo based merely on the fact that he denied his inmate appeal and failed to take action after the alleged violations took place. Accordingly, Plaintiff fails to state a cognizable claim against Defendant Mayo.

### III.

### CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim against Defendants Rizer, Eberle, Meyers, Emerson, Sanchez, Chavez, Mello, Lundy, and Magallance for failure to protect in violation of the Eighth Amendment. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claim under the Eighth Amendment against Defendants Rizer, Eberle, Meyers, Emerson, Sanchez, Chavez, Mello, Lundy, and Magallance, Plaintiff may so notify the Court in writing, and the Court will dismiss the other claims and Defendants, and will forward Plaintiff nine (9) summons and nine (9) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff an amended civil rights complaint form;

2.    Within thirty (30) days from the date of service of this order, Plaintiff must either:

      a.    File an amended complaint curing the deficiencies identified by the Court in this order, or

      b.    Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Rizer, Eberle, Meyers, Emerson, Sanchez, Chavez, Mello, Lundy, and Magallance for failure to protect in violation of the Eighth Amendment; and

///
///
///

3.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **April 28, 2016**

_____
UNITED STATES MAGISTRATE JUDGE

14