UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PURTUE,<br><br>                    Plaintiff,<br><br>         v.<br><br>B. KEARNES, et al.,<br><br>                    Defendants. | Case No.: 1:15-cv-00551-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES<br><br>[ECF Nos. 38, 46, 51, 57, 61] |

Plaintiff Michael Purtue is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment for failure to exhaust the administrative remedies, filed December 27, 2016.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants Rizer, G. Eberle, J. Meyers, J. Emerson, R. Sanchez, J. Chavez, B. Mello, L. Lundy and D. Magallance for deliberate indifference to his safety in violation of the Eighth Amendment.

On December 27, 2016, Defendants Lundy, Mello, Eberle, Meyers, Emerson, Sanchez and Chavez filed a motion for summary judgment for failure to exhaust the administrative remedies.  (ECF

1

No. 38.) On January 27, 2016, Defendant Magallance joined in the motion for summary judgment. (ECF No. 46.) Defendant Rizer has not yet been served.

On February 17, 2017, and February 27, 2017, Plaintiff filed separate oppositions to Defendants' motion for summary judgment.[1]  (ECF Nos. 51, 57.)

On March 10, 2017, Defendants filed a reply to both of Plaintiff's oppositions.  (ECF No. 61.) The motion for summary judgment is submitted for review without oral argument.  Local Rule 230(l).

## II.

## LEGAL STANDARD

### A.     Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'").  Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166.  Otherwise, the defendants must produce

---

[1] Plaintiff's oppositions are identical, with the exception of additional exhibits included in the first opposition filed on February 17, 2017.

evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

///
///
///

# III.

# DISCUSSION

## A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare, Cal. Code Regs., tit. 15, § 3084.1, and compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims, Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). The Title 15 regulations governing CDCR's inmate appeals process were amended in 2011, but Plaintiff's claims arise from events which occurred in 2010 and the relevant regulations are those which were in effect during that time period. Therefore, the citations to Title 15 set forth herein are those pre-amendment regulations in effect prior to December 13, 2010.

During the relevant time period, the appeals process was initiated by submitting a CDC Form 602 describing "the problem and action requested," Cal. Code Regs., tit. 15, § 3084.2(a) (West 2009), and appeal had to be submitted "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision," tit. 15, § 3084.6(c). Up to four levels of appeal could be involved, including an informal level and the first formal level, second formal level, and third formal level, which was also known as the Director's Level. Tit. 15, § 3084.5.

A prisoner complies with an institution's administrative procedures when a grievance "alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). To provide adequate notice, an inmate must "provide the level of detail required by the prison's regulations." Sapp, 623 F.3d at 824. The prison's regulations required that the inmate "describe the specific issue under appeal and the relief requested." Cal. Code Regs., tit. 15, §

3084.2(a).[2]

**B.      Summary of Allegations Underlying Plaintiff's Constitutional Claims**

On October 13, 2009, Plaintiff arrived at California Correctional Institution (CCI).  On February 1, 2010, Plaintiff was involved in a cell fight with his cellmate and subsequently moved and rehoused in housing unit 8.  Defendant T. Langhardt packed and inventoried Plaintiff's personal property.

On February 19, 2010, when Defendants B. Kearnes and G. Eberle attempted to re-issue Plaintiff his property, Plaintiff noticed some of his property was missing and refused to sign the inmate property inventory CDC 1083 form and Defendant Kearnes therefore refused to give Plaintiff his property.

On February 21, 2010, Plaintiff spoke to Defendant B. Mello regarding his missing property and Defendant Mello stated, "I am working a double today and later today I would [sic] call over to a building and have them get the rest of your property."

On March 2, 2010, Plaintiff was re-issued his property by Defendants Kearnes and Eberle and Plaintiff noticed a large portion of his property missing.  Plaintiff informed Kearnes of his missing property who stated, "602 it."

Plaintiff contends that Defendants deliberately took his trial transcripts and circulated them to inmates in order to spread the rumor that Plaintiff was a "snitch" and "rat."

On March 27, 2010, during an escort for visitation, Defendant S. Rizer entered A-section as Plaintiff was passing by and Rizer stated, "rat."

On May 6, 2010, Plaintiff wrote a letter of complaint to Warden F. Gonzalez regarding the intentional taking of his personal property and transcripts-which officers circulated around to inmates and referred to Plaintiff as a "rat."

On May 8, 2010, Defendant Rizer said something to an inmate on the bottom tier who later that afternoon started talking to another inmate over the tier and yelled out "he went in that house and

---

[2] The regulations were amended, effective January 28, 2011, and imposes more stringent requirements, including listing the names of staff members involved in the issue and describing their involvement.  See Cal. Code Regs., tit. 15, 3084.2(a)(1)-(a)(4) (2014).

5

killed those people and told everything." Defendant Rizer conspired with inmates by giving them information from Plaintiff's transcripts.

On May 14, 2010, Plaintiff wrote a family member regarding his missing property. On May 17, 2010, Defendant S. Rizer entered A-section to do yard release and yelled out "we'll chew you up."

On May 22, 2010, Defendant Rizer entered A-section and yelled out "fuck it let him lock up."

On June 1, 2010, during institutional count Defendant Eberle stopped at Plaintiff's cell and stated "Hey Purtue the sergeant who heard your appeal should have granted it he messed up and the word around is that you are going to win it at the second level so appeal it trust me."

On June 14, 2010, Defendant Eberle passed some papers to inmates in his housing section, and Plaintiff heard an inmate yell "I got those legal papers." Defendant circulated Plaintiff's trial transcripts around the housing unit to inmates.

On June 21, 2010, Defendant Eberle stopped at cell #203 housing Mexican inmates and stated, "we gonna fuck his ass."

On June 23, 2010, Defendant B. Mello entered A-section and cell #110 housing Mexican inmate and Plaintiff heard Mello stated "I just want to make sure we're on the same page." Right after that statement, Defendant B. Mello came directly to Plaintiff's cell door along with Defendant Eberle and told Plaintiff "you need to come out of the cell and Plaintiff said what for and [D]efendant B. Mello stated "because you haven't been out of the cell in a while." They gave Plaintiff until the next day to exit his cell and Defendant Mello told Defendant Eberle "we'll get him."

On June 26, 2010, Defendant Meyers stopped at cell #103 housing White inmates and stated "he's a rat." Meyers deliberately exposed Plaintiff to harm at the hands of other inmates.

On July 28, 2010, Defendant Eberle yelled out from the dayroom floor "you rat."

On October 5, 2010, Plaintiff was pepper sprayed by Defendant B. Mello and removed from one building to another where prison officials continued to pass his transcripts around to inmates and label Plaintiff a snitch.

On October 7, 2010, Defendant J. Emerson entered B-section and yelled out "gonna get a stickin." Defendant Emerson's comment toward Plaintiff proves he knows about a substantial risk of serious harm to Plaintiff.

On October 13, 2010, Defendant R. Sanchez escorted Mexican inmates back from the doctor line and when Sanchez removed the handcuffs from the inmates he stated "he snitch but you didn't hear it from me."

On October 31, 2010, during institutional count Defendant R. Sanchez entered B-section and he yelled out "got your ass."

On November 17, 2010, Defendant J. Chavez escorted a Black inmate to the afternoon shower and once the inmate was inside the shower, Defendant Chavez stated to the inmate "he's a rat."

On December 8, 2010, Defendant B. Mello entered B-section and stood inside the section doorway and yelled out "you have until Friday or its everywhere you go." Defendant was speaking about Plaintiff's missing trial transcripts. Later that evening, Defendant Chavez told the inmates "since he ain't coming out as soon as he file his appeal its all the way live."

On March 26, 2011, lieutenant Mayo interviewed Plaintiff regarding his cancelled appeal submitted on February 14, 2011. Plaintiff was informed that because his appeal was cancelled he would not receive a response, and the Warden requested if Plaintiff had anything additional to add. Lieutenant Mayo then stated "you think my officers would risk [their] jobs at $100,000.00 a year just to pass your transcripts around this (8) officers you have down here even a sergeant. Now what makes you so important that my officers would want to mess with you by passing your transcripts around to inmates. [There is] a whole lot of ways they can mess with you that will make your head go crazy."

Plaintiff told lieutenant Mayo that because of a racial conflict between Plaintiff and Mexican inmates, officers gave them Plaintiff's property and planned to expose his transcripts over the tier to appease the Mexican inmates to resolve the conflict. Lieutenant Mayo stated, "there's one way to mess with you." Plaintiff advised Mayo that the problem had been going on for over two years and Plaintiff previously reported the misconduct by way of inmate grievances.

**C. Defendants' Request for Judicial Notice**

Defendants request that the Court take judicial notice of Title 15 of the California Code of Regulations, Sections 3084 through 3085, updated through January 1, 2011. (ECF No. 38-7.)

Courts may take judicial notice of the records of state agencies, administrative bodies, and other undisputed matters of public record. Disabled Rights Action Comm. v. Las Vegas Events, Inc.,

7

375 F.3d 861, 866 n.1 (9th Cir. 2004); Lundquist v. Cont'l Cas. Co., 394 F.Supp.2d 1230, 1242-43 (C.D. Cal. 2005) (stating courts may take judicial notice of records and reports of administrative bodies).

### D. Defendants' Statement of Undisputed Facts[3]

1. Plaintiff is a California State prison inmate. At all relevant times alleged in the complaint, Plaintiff was housed at California Correctional Institution ("CCI") in Tehachapi, California. (ECF No. 1, Compl. at 2; ECF No. 8, First Amd. Compl. ("FAC") at 2-4.)[4]

2. On April 10, 2015, Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that prison officials were deliberately indifferent to Plaintiff's safety, in violation of the Eighth Amendment, after an incident on February 1, 2010. (ECF No. 1, Compl. at 9, 11, 16.)

3. In the complaint, Plaintiff alleged that because of a racial conflict between Plaintiff and Mexican inmates, after he was moved from his cell on February 1, 2010, officers gave other inmates Plaintiff's property and exposed his transcripts over the tier to appease the Mexican inmates to resolve the conflict. Plaintiff contends Defendants deliberately took his trial transcripts and circulated them to inmates in order to spread the rumor that Plaintiff was a "snitch" and a "rat." (ECF No. 1, Compl. at 9-16; ECF No. 7, Order at 9-10.)

4. On May 18, 2016, Plaintiff filed a FAC wherein he re-alleged the same deliberate indifference claims against prison officials arising from the February 1, 2010 incident. (ECF No. 8, FAC at 5-10.)

5. The allegations contained in Plaintiff's original complaint and operative FAC are almost identical. (ECF Nos. 1 & 8.)

---

[3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendants as undisputed. Local Rule 56-260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). The Court has omitted any references by Defendants to statements of law.

[4] The references to the complaint and first amended complaint are to the page numbers assigned to the electronically-filed versions of the pleading as reflected on the court's docket.

6. CDCR has a comprehensive administrative appeals system for prisoners' complaints, described in the California Code of Regulations (CCR), Title 15, § 3084, et seq.[5] CCR, Title 15, § 3084.1(a) provides that any inmate may appeal any departmental decision, action, condition, or policy which they can demonstrate as having a material effect upon their welfare. (Decl. of M. Voong, ¶¶ 5-7; Decl. of J. Wood, ¶¶ 3-5.)

7. Under the California Code of Regulations in effect on February 1, 2010, an inmate had to submit an appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision. Under the revised regulations effective January 28, 2011, an inmate has 30 calendar days to submit an appeal from the occurrence of the event or decision being appealed, or upon first knowledge of the action or decision being appealed. (Cal. Code Regs., tit. 15, §§ 3084.6(c), 3084.8(b); Decl. of M. Voong, ¶ 7(c).)

8. To exhaust the administrative appeal process, the inmate must complete his appeal through the third level of review. (Cal. Code Regs., tit. 15, § 3084.7 (2012); Decl. of M. Voong, ¶¶ 5-6; Decl. of J. Wood, ¶¶ 4-5.)

9. Plaintiff previously filed inmate grievances through CDCR's administrative appeals system while incarcerated. (Decl. of M. Voong, ¶ 13, Ex. D; Decl. of J. Wood, ¶ 121, Ex. E.)

10. On March 14, 2010, Plaintiff submitted a grievance, Appeal Log No. CCI-10-00533, alleging that on February 1, 2010, he was involved in a fight with his cellmate. Plaintiff was moved from his cell to another housing unit and his property was inventoried. Upon receipt of his property, Plaintiff determined that some property was missing and/or damaged. Plaintiff was requesting reimbursement for the missing or damaged property. (Decl. of M. Voong, ¶ 10(a), Ex. A at 9-10, 13.)

11. On April 19, 2011, Plaintiff's Appeal Log No. CCI-10-00533, regarding the allegations that Plaintiff's property was damaged or missing as a result of his cell move on February 1, 2010, and requesting replacement items, was denied at the third level of review. It was noted that Plaintiff

---

[5] Effective January 28, 2011, the regulations governing inmate appeals were amended by Title 15 of the CCR, Section 3084, et seq. See CCR, tit. 15, §§ 3084-3084.8 (amended 2011). Because the inmate's claims relate to incidents in 2010, before the amendments, the former version of the regulations as described herein apply, since they were in effect at the time the events alleged occurred.

refused to accept the replacement items offered by the institution. (Decl. of M. Voong, ¶ 10(a), Ex. A at 7-8.)

12. On May 9, 2011, Plaintiff's 602 appeal, IAB number 1019197, was rejected pursuant to Cal. Code Regs., tit. 15, § 3084.6(b)(15). (Decl. of M. Voong, ¶ 11(a); ECF No. 1, Compl. at 55-60.)

13. On May 5, 2011, Plaintiff's 602 appeal, IAB number 1019198, was rejected pursuant to Cal. Code Regs., tit. 15, § 3084.6(b)(15). (Decl. of M. Voong ¶ 11(b); ECF No. 1, Compl. at 64-66.)

14. On May 5, 2011, Plaintiff's 602 appeal, IAB number 1019199, was rejected pursuant to Cal. Code Regs., tit. 15, § 3084.6(b)(15). (Decl. of M. Voong, ¶ 11(c); ECF No. 1, Compl. at 67-70.)

15. On June 6, 2014, Plaintiff submitted a grievance in Appeal Log No. CCI-14-1309, alleging that when he transferred to Pelican Bay State Prison (PBSP) in November 2013, his personal property was not transported with him. Plaintiff requested to have all his personal property located and forwarded to PBSP. On October 9, 2014, a comparable TV replaced Plaintiff's missing property, and Plaintiff was notified his documents were located and sent to PBSP, and if he needed specific appeal information to contact his counselor or the appeals coordinator. Plaintiff's appeal was granted at the second level of review on October 16, 2014 in that the property issues were addressed. (Decl. of J. Wood ¶ 9(b), Ex A at 9-17; Decl. of A. Sheldon, ¶ 6(a).)

16. On February 27, 2015, Plaintiff's 602 appeal, PBSP-14-01309, was rejected because Plaintiff's appeal was granted at the institutional level, and there was no unresolved issue to be reviewed at the Third Level of Review. (Decl. of M. Voong, ¶ 11(d), Ex. C.)

17. On July 20, 2016, Plaintiff's 602 Appeal Log No. CCI-16-001100 was cancelled at the second level of review. That appeal addressed Plaintiff's allegations that while housed at CCI, Chief Deputy Warden Holland put Plaintiff on a camera device that allowed Holland to broadcast Plaintiff to other prison officials and inmates. Plaintiff alleged that Holland and Sanders called him a rat. Plaintiff alleged that he was transferred to PBSP where the device is still used. The appeal was cancelled because the time limits for submitting the appeal were exceeded. Based on a review of Plaintiff's housing history, he had not been housed at CCI since 2012. As such, he was outside the

1 time constraints for filing an appeal that must be filed within 30 days of the event. (Decl. of J. Wood,
2 ¶ 10(b), Ex. C; Decl. of A. Sheldon, ¶ 6(b).)

3       18.     On July 26, 2016, Plaintiff's 602 Appeal Log No. CCI-16-01114 was cancelled
4 pursuant to CCR, Title 15, section 3084.6(c)(2), because the appeal duplicated a previous appeal upon
5 which a decision has been rendered or is pending. The appeal was a duplicate of Appeal Log No.
6 CCI-16-01100 received at CCI on July 19, 2016. (Decl. of J. Wood, ¶ 10(b), Ex. C; Decl. of A.
7 Sheldon, ¶ 6(b).)

8       19.     On August 8, 2016, Plaintiff submitted a grievance in Appeal Log No. CCI-16-01289,
9 alleging that his previously submitted appeal (CCI Log No. 16-01100) was incorrectly processed by
10 appeals staff. Plaintiff stated that his appeal was cancelled because it was untimely, but that the
11 Appeals Coordinator should reconsider the cancellation as his claims of staff harassment remains
12 ongoing. Plaintiff requested that the decision to cancel his previously submitted appeal be reversed
13 and that the appeal be granted for further review. (Decl. of M. Voong, ¶ 10(c), Ex. B.)

14       20.     On November 22, 2016, Plaintiff's 602 Appeal Log No. CCI-16-01289, appealing the
15 cancellation decision in Log No. 16-01100, was denied at the third level of review. (Decl. of M.
16 Voong, ¶ 10(c), Ex. B.)

17       **E.**     **Findings on Defendants' Motion**

18 Defendants argue that Plaintiff failed to exhaust his administrative remedies for his deliberate
19 indifference claims prior to filing this action because the sole grievance timely submitted complained
20 only of missing property as a result of Plaintiff's cell transfer on February 1, 2010, and did not initially
21 describe the intentional conduct alleged in this action, until submission of the appeal to further levels
22 of review.

23 In opposition, Plaintiff argues that Appeal Log No. CCI-1-0-00533 included his claims of
24 missing transcripts and deliberate indifference to his safety when the transcripts were circulated to
25 other inmates to call him a snitch and rat. Plaintiff also argues that his grievances submitted in 2011
26 that were screened out or cancelled as untimely constituted "obstruction" of the appeals process, and
27 excuse exhaustion. Plaintiff further argues that in 2016 he submitted an appeal alleging an "ongoing
28

11

violation" of prison officials referring to him as a snitch and rat, and added new claims that were properly exhausted by way of amended complaint.

Defendants bear the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy. Albino, 747 F.3d at 1172. Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances which is initiated by submitting a CDCR Form 602 Inmate/Parolee Appeal. There is also no dispute that Plaintiff was aware of the inmate appeals process. The issue in this case is whether the appeals that Plaintiff filed were sufficient to exhaust his failure to protect claims against Defendants.

1. Appeal Log No. 10-00533

In Appeal Log No. CCI-10-00533, Plaintiff complained that his property was missing after his housing reassignment on February 1, 2010. An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress," and "the prisoner need only provide the level of detail required by the prison's regulations." Sapp, 623 F.3d at 824. Plaintiff initiated Appeal Log No. 10-00533 on March 14, 2010, in which he stated:

> This appeal is in regards to appellant's missing property per Title 15, California Code of Regulations, section 3084.7(c)(1), D.O.M. § 54100.22. Due to the negligence of departmental staff for the loss, damage, or destruction of my personal property by prison officials.
>
> On February 1, 2010, while housed in 4B 5 building, I was involved in a cell fight and later rehoused in 4B 8 building. My personal property was transpacked by 5 building floor staff, officer Langhardt.
>
> On March 2, 2010, I was re-issued my personal property by officer B. Kern and officer Eberle. I noticed a large portion of my property missing and I informed officer Kern of my missing property who in turn stated, "602 it."
>
> Later that day, I spoken to correctional sergeant M. Worrell regarding my missing property and he asked, "whose the officer that transpacked your property." I told him that officer Langhardt name is on the property inventory sheet. Sergeant M. Worrell stated, "Give me some time and I'll call over to 5 building and talk to officer Langhardt about your property."
>
> These are the items and property missing, LEGAL MATERIALS: case transcripts, legal books, California Prisoner Handbook, and supplement handbook, U.S. Constitution book. MISC: thermal top, (24) manilla envelopes, (2) t.v. cables, (1) tookpaste, (2) bars of soap, (1) dental floss. FOOD: (14) soups, (3) bags of chips, (1) bag of cookies, (1) bag of cereal, (2) beef sausages, (1) bag of pork skins, (5) honey buns, (1) Folgers. DAMAGED ITEMS: broken headphones and zipped thermal bottom. Violation of CCR 3004 and CCR 3391.

12

> See attached property inventory sheet and canteen receipts from Nov thru Jan as exhibits: A, B, C, and D, to show I purchased the items in questioned. Receipts for the other missing property can be accounted for in the R&R institution inmate property records. CCR 3191.
>
> I strongly believe that reprisal was taken against me by prison officials which led up to the loss and damage of my personal property and the negligent actions on the part of the State and its employees. Violating CCR 3004(a), 3391(a) and shall be held liable in accordance to 3193(b).

(Decl. of M. Voong, ¶ 10(a), Ex. A at 9-10, 13.)

The appeal was denied at the informal level of review. (Ex. A at 9.) Plaintiff submitted the appeal to the first formal level of review, which was denied on May 11, 2010. (Ex. A at 17-18.) The appeal was thereafter partially granted at the second level of review in that Plaintiff was offered replacement items of the alleged missing and damaged property, but refused to accept such items. The appeal was denied as to the missing transcript. (Ex. A. at 21.) An amended decision with the same determination was issued on November 19, 2010. (Ex. A at 23.) Plaintiff's appeal was denied at the third and final level of review on April 19, 2011. (Ex. A at 7-8.)

An inmate grievance must "describe the problem and action requested" on the inmate-grievance form at the first level. Cal. Code Regs. tit. 15, § 3084.2(a) (2009). The form used by Plaintiff limited him to one paragraph, plus one continuation page, to describe the problem. Id. An inmate may not change the issue of his original appeal mid-course, because to do so circumvents the requirement that a prisoner submit a claim through several levels of review and assessment. See Cal. Code Regs. tit. 15, § 3084.5 (2009) (requiring four levels of appeal review).

The original issue raised in Parts A and B of Plaintiff's appeal form was a request for replacement for missing personal property, including his trial transcripts. (Ex. A at 9-10.) Plaintiff attributed the missing property to prison officials' negligence. (Id.) The appeal did not place prison officials on notice of a claim that Plaintiff's transcripts were being circulated to other inmates or that prison officials were referring to Plaintiff as a snitch. (Id.)

In setting forth his dissatisfaction with the second level of review, Plaintiff attempted to add new issues not included in the original appeal to present new factual claims that prison officials were circulating his transcripts and calling Plaintiff a "snitch and a rat." (Ex. A at 11-12.) Thus, in

1  presenting this appeal to the third level of review, Plaintiff presented conduct that took place after the
2  submission of the original appeal on March 14, 2010.  However, the regulations did not provide that
3  inmates could expand their appeal issues at a later level of review by including a new claim.  Cal.
4  Code Regs. tit. 15, § 3084.2(a)(1) (2009).   While prison officials may have had discretion to expand
5  their appeal decision to include newly raised issues, in the absence of evidence in the form of an
6  appeal response demonstrating that they actually did so, an inmate's subsequent inclusion of a new
7  issue at the third level of review does not constitute "proper exhaustion" in compliance with the
8  applicable regulations.  See Sapp, 623 F.3d at 825 (upholding prison officials' decision to screen out
9  an appeal because the plaintiff included a new issue at the second level of review); Dawkins v. Butler,
10 No. 09CV1053 JLS (DHB), 2013 WL 2475870. *8 (S.D. Cal. 2013).  Here, it is undisputed that the
11 prison officials' response did not confirm notice of the new issues raised on appeal.  Indeed, the new
12 issues that prison officials were circulating Plaintiff's transcripts and calling him a snitch and a rat,
13 were not addressed in either the amended second level response, or at the Director's level.

14 Further, although Plaintiff added issues to his appeal upon submission to the Director's level
15 review on September 7, 2010, and the appeal was sent back to the institution on November 1, 2010 to
16 address information obtained at the informal level concerning another inmate bagging Plaintiff's
17 property, the amended response was limited to the missing property claim. (Decl. of M. Voong, ¶ 10,
18 Ex. A at 23-24; Decl. of J. Wood, ¶ 9(a)-(c).)  The appeal remained granted, in that Plaintiff was
19 offered replacement personal property items, although his complaint of a missing transcript was
20 denied.  (Id.)  At the third level of review, the response was also limited to the missing property claim,
21 and did not address the new allegations of circulation of the transcripts.  (Decl. of M. Voong, ¶ 10(b),
22 Ex. A at 11-12.)  Thus, the second and third level appeal responses to Log No. 10-00553 confirm that
23 the allegations addressed by the prison were limited to the request for replacement of missing or
24 damaged property after a cell move.  Accordingly, prison officials were not on notice of Plaintiff's
25 new claims added at the third level of review, and Plaintiff's request for an "equitable exception"
26 based on the amended response by the institution at the second level is without merit.

27 Furthermore, the Supreme Court has recently made clear that the only exception to the
28 exhaustion requirement is the requirement that an inmate exhaust only those remedies that are

available.  See Ross v. Blake, 136 S.Ct. at 1855-59 (the mandatory language of the PLRA prevents courts from creating a "special circumstances" exception to the exhaustion requirement and the only exception is that the administrative remedies be available).  Plaintiff does not claim that he was unable to timely submit his claims, and the record clearly supports that the remedies were available to him.  Accordingly, Appeal Log No. 10-00553 did not serve to exhaust the claims in the instant action.

        2.        Other Appeals Rejected or Cancelled as Untimely

Plaintiff argues that the grievances submitted in 2011 alleging that prison officials circulated his transcripts and called him a "rat," which were screened out or cancelled as untimely served to exhaust his claims in the instant action.  (Opp'n at 10-11.)  Plaintiff specifically alleges that the cancellation of his appeal as untimely constituted "obstruction" of the appeals process and excuses exhaustion.  (Id. at 11.)

It is undisputed that Plaintiff submitted appeals dated January 16, 2011 and February 14, 2011, regarding the circulation of his transcripts and reference as a snitch and rat, which were returned to Plaintiff in May 2011 because he was attempting to bypass lower levels of review.  (Decl. of M. Voong, ¶¶ 11(a)-(c); ECF No. 1, Compl. at 55-60, 64-66, 67-70; Opp'n at 10-11.)  Plaintiff submitted his appeals directly to the third level of review, which is not permitted under the regulations.  Cal. Code Regs. tit. 15, § 3084.6(b)(15) (2011) (prohibit attempts to bypass lower levels of review).  Therefore, it was proper pursuant to the applicable regulations to reject the appeals.

Plaintiff was required to submit an appeal within 15 working days of the prison officials' conduct related to the missing transcripts and deliberate indifference claim in March 2010, or at latest by April 2010, as alleged in the operative complaint.  In his opposition, Plaintiff contends that these appeals were first submitted to the appeals coordinator, but they were rejected as untimely.  (Opp'n at 11.)  However, the appeals were properly rejected as untimely.  The January 16, 2011 appeal was properly rejected as untimely under the regulations because it was submitted more than fifteen working days after the prison officials' conduct related to his missing transcripts in March 2010 (Cal. Code Regs. tit. 15, § 3084.6(c) (2011)).  The February 14, 2011 appeal was also properly rejected as untimely under the regulations because it was submitted more than thirty working days after the prison

15

officials' conduct beginning in March 2010 related to the circulation of his transcripts (Cal. Code Regs. tit. 15, § 3084.6(c)(4) (2012).[6]

After the February 14, 2011 appeal was cancelled as untimely, Plaintiff does not dispute that he submitted a new appeal to the third level dated March 27, 2011, regarding the cancellation of his February 14th grievance. The appeal was rejected on May 9, 2011, because Plaintiff attempted to submit the appeal without review at the lower levels. (ECF No. 1, Compl. at 55-57; Opp'n at 11.) This appeal was properly rejected because Plaintiff bypassed lower levels of review. Cal. Code Regs. tit. 15, § 3084.6(b)(15) (2011). Simply stated, Plaintiff has not met his burden of demonstrating that the grievance process was unavailable to him through no fault of his own. Sapp, 623 F.3d at 822-23. Rather, Plaintiff did not complete the grievance process in accordance with the applicable regulations, and there is no showing that he was obstructed in any way from doing so. Accordingly, these grievances did not serve to the exhaust the claims in the instant action.

        3.        <u>Ongoing Claim of Deliberate Indifference Exhausted at Third Level of Review</u>

In his opposition, Plaintiff admits that he submitted an inmate appeal in 2016 alleging an "ongoing violation" because prison officials continued to refer to him as a snitch and a rat, which was cancelled as untimely on July 20, 2016.

On July 20, 2016, Plaintiff submitted Appeal Log No. CCI-16-01100, cancelled as untimely, which addressed Plaintiff's claim that a camera device was monitoring Plaintiff from CCI, and that prison officials, non-defendants here, continued to call Plaintiff a "rat" while he was housed at PBSP. (Decl. of J. Wood, ¶ 10(b), Ex. C at 26-32.) Plaintiff's appeal submitted in 2016, for an incident which occurred while he was housed at CCI, where he had not been housed for four years, was untimely under section 3084.8(b), as it was submitted more than 30 calendar days after the occurrence of the evidence being appealed. Cal. Code Regs. tit. 15, § 3084.8(b). Plaintiff submitted the same grievance again in Appeal Log No. CCI-16-01114 and, on July 26, 2016, Plaintiff's grievance was cancelled as a duplicate of Appeal Log No. 16-01100. (Decl. of J. Wood, ¶ 10(c), Ex. D at 34-38.)

---

[6] The January 28, 2011 amendment applies to this grievance.

16

In Appeal Log No. 16-01289, Plaintiff argued that his appeal in Log No. CCI-16-01100 should not have been cancelled as untimely since the harassment and deliberate indifference is ongoing by non-defendants. (Decl. of M. Voong, ¶ 10(c), Ex. B at 38-41.) The appeal was not exhausted until November 22, 2016, more than one year after. (Id., Ex. B at 36-37.) This appeal was not exhausted until after the instant action was filed, which is not proper exhaustion under the PLRA. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2001); see also Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

Plaintiff contends that under Rhodes v. Robinson, 621 F.3d 1002, 1006 (9th Cir. 2010), he can add new claims that are newly exhausted in an amended complaint. However, on March 10, 2017, Plaintiff's motion to amend the complaint to add new claims was denied, and therefore this action is proceeding solely on the claims presented in the first amended complaint. Accordingly, exhaustion of any claims that took place after the filing of the instant action is irrelevant.

Plaintiff further argues that he continues to suffer "ongoing retaliation" which arose from the installation of a camera device on his body in 2011. If the issue is ongoing, the inmate may appeal at any time during the duration of the event. Cal. Code Regs. tit. 15, § 3084.6(c)(4). Plaintiff's reliance on an "ongoing violation" is unavailing here because his claims are based on a single incident occurring in 2011, when a camera device was allegedly implanted on him (see ECF No. 36, at 5), but he did not submit his grievance until 2016. The appeal was therefore properly cancelled as untimely. Cal. Code Regs. tit. 15, § 3084.6(c)(4).

### 4.  Appeal Log No. 14-01309

On June 6, 2014, Plaintiff submitted Appeal Log No. CCI-14-1309, alleging that when he transferred to PBSP in November 2013, his personal property was not transported with him. Plaintiff requested to have all his personal property located and forwarded to PBSP. On October 9, 2014, a comparable TV replaced Plaintiff's missing property, and Plaintiff was notified his documents were located and sent to PBSP, and if further information was necessary to contact his counselor or appeals coordinator. Plaintiff's appeal was therefore granted at the second level of review on October 16,

2014, in that the property issues were addressed. (Decl. of J. Wood, ¶ 9(d), Ex. A at 9-17.) Thereafter, on February 27, 2015, Plaintiff's Appeal Log No. PBSP-14-01309, was rejected because Plaintiff's appeal was granted at the institutional level, and there was no unresolved issue to be reviewed at the Third Level of Review. (Decl. of M. Voong, ¶ 11(d), Ex. C. at 55.) Because this appeal clearly did not involve the claim that deliberate indifference in this case, it did not serve to exhaust the claims. See Griffin v. Arpaio, 557 F.3d at 1120 (a prisoner complies with an institution's administrative procedures when a grievance "alerts the prison to the nature of the wrong for which redress is sought.").

### F.     Unserved Defendant Rizer

As mentioned above, Defendant Rizer has not yet been served in this action. Notwithstanding the lack of service, it is clear that the failure to protect claim against him is subject to dismissal for the same reasons as to all other served-Defendants. The allegations presented in the first amended complaint all revolve around Plaintiff's claim that Defendants circulated his transcripts and called him a snitch and a rat, and there is no indication in the record that the analysis of the failure to protect claim against Defendant Rizer differs from the analysis of that claim against the other Defendants.

In light of the fact that the Court has found Plaintiff failed to exhaust the administrative remedies with respect to his failure to protect claim against Defendants G. Eberle, J. Meyers, J. Emerson, R. Sanchez, J. Chavez, B. Mello, L. Lundy and D. Magallance, the same claim against Defendant Rizer must likewise be dismissed, without prejudice.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendants' motion for summary judgment be granted; and

2.     This action be dismissed, without prejudice, as to all Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

18

1  Recommendations." The parties are advised that failure to file objections within the specified time
2  may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir.
3  2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 20, 2017**

UNITED STATES MAGISTRATE JUDGE